# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RYAN MERHOLZ, and MELVYN KLEIN, derivatively on behalf of WORLD WRESTLING ENTERTAINMENT, INC., | : | CASE NO. 3:20-CV-00557-VAB |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants, | : | |
| | : | |
| WORLD WRESTLING ENTERTAINMENT, INC., | : | |
| | : | |
| | : | |
| Nominal Defendant. | : | |

_____

| | | |
|---|---|---|
| DANIEL KOOI, derivatively on behalf of WORLD WRESTLING ENTERTAINMENT, INC., | : | CASE NO. 3:20-CV-00743-VAB |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| VINCENT K. MCMAHON, FRANK A. RIDDICK III, JEFFREY R. SPEED, PATRICIA A. GOTTESMAN, STUART U. GOLDFARB, LAUREEN ONG, PAUL LEVESQUE, ROBYN W. PETERSON, STEPHANIE MCMAHON, MAN JIT SINGH, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |
| WORLD WRESTLING ENTERTAINMENT, | : | |

INC.                                              :
                                                  :
            Nominal Defendant.                    :
_____

RODNEY NORDSTROM, derivatively on        :   CASE NO. 3:20-CV-00904-VAB
behalf of WORLD WRESTLING                :
ENTERTAINMENT, INC.,                     :
                                         :
            Plaintiff,                   :
                                         :
v.                                       :
                                         :
VINCENT K. MCMAHON, GEORGE A.            :
BARRIOS, MICHELLE D. WILSON,             :
STEPHANIE MCMAHON, PAUL                  :
LEVESQUE, FRANK A. RIDDICK III,          :
STUART U. GOLDFARB, LAUREEN ONG,         :
ROBYN W. PETERSON, MAN JIT SINGH,        :
JEFFREY R. SPEED, ALAN M. WEXLER,        :
and PATRICIA A. GOTTESMAN,               :
                                         :
            Defendants,                  :
                                         :
WORLD WRESTLING ENTERTAINMENT,           :
INC.,                                    :
                                         :
            Nominal Defendant.           :   NOVEMBER 20, 2020

_____

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO DENNIS PALKON'S
MOTION FOR PERMISSIVE INTERVENTION, APPOINTMENT OF LEAD
COUNSEL, AND DENIAL OF DEFENDANTS' MOTIONS TO DISMISS AS MOOT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................1

FACTUAL BACKGROUND ..................................................................4

    I.      WWE's Board of Directors.......................................................4

    II.     The XFL Transaction ..............................................................5

    III.    The OSN Agreement................................................................8

          A.     The February 2018 Board of Directors Meeting......................8

          B.     The October 2018 Board of Directors Meeting ......................8

          C.     The January 2019 Board of Directors Meeting........................9

          D.     The April 2019 Board of Directors Meeting...........................9

    IV.    The Agreement in Principle ....................................................10

    V.     Procedural History ................................................................11

          A.     Plaintiffs' Complaints ...........................................................11

          B.     The Court's Dismissal of Plaintiffs' Complaints..................12

          C.     Palkon's Section 220 Demand and Intervention Motion........13

ARGUMENT ....................................................................................15

    I.      Futility Is a Proper Ground for Denying a Motion to Intervene ...........15

    II.     Standard for Assessing Futility of Motion to Intervene........................16

    III.    Palkon's Proposed Complaint Fails to Plead Demand Futility.............18

          A.     Standards for Pleading Demand Futility.................................18

          B.     Palkon Fails To Plead That The Outside Directors Face a Substantial Likelihood of Liability...............................................................20

               1.     No Outside Director Faces A Substantial Likelihood of Liability for Breach of Fiduciary Duty.......................................20

               2.     No Outside Director Faces A Substantial Likelihood of Liability for Unjust Enrichment.................................................26

          C.     Palkon Fails to Plead That Any Outside Directors Are Dominated and Controlled By Vince McMahon.....................................................27

          D.     Palkon's Proposed Complaint Fails to State a Claim for Relief..............32

               1.     Palkon Fails to Plead a Breach of Fiduciary Duty Claim ............32

               2.     Palkon Fails to Plead an Unjust Enrichment Claim.....................33

    IV.    The Court Should Dismiss These Lawsuits With Prejudice ...................34

CONCLUSION..................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amalgamated Bank v. Yahoo! Inc.*,
  132 A.3d 752 (Del. Ch. 2016) ............................................................................17

*Aronson v. Lewis,*
  473 A.2d 805 (Del. 1984), *overruled on other grounds by*
  *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ........................................27, 28, 29

*In re Boston Celtics Ltd. Partnership Shareholders Litigation*,
  No. 16511, 1999 WL 641902 (Del. Ch. Aug. 6, 1999) ........................................31

*Braddock v. Zimmerman*,
  906 A.2d 776 (Del. 2006) ...................................................................................19

*Brody v. Chemical Bank*,
  517 F.2d 932 (2d Cir. 1975).................................................................................19

*In re Caremark International Inc. Derivative Litigation*,
  698 A.2d 959 (Del. Ch. 1996)..............................................................................24

*Ceribelli v. Elghanayan*,
  No. 91 CIV. 3337, 1994 WL 529853 (S.D.N.Y. Sept. 28, 1994)...........................16

*In re China Automotive Systems Inc. Derivative Litigation*,
  No. 7145, 2013 WL 4672059 (Del. Ch. Aug. 30, 2013) ......................................26

*In re Citigroup Inc. Shareholder Derivative Litigation*,
  964 A.2d 106 (Del. Ch. 2009)..............................................................................24

*In re Clovis Oncology, Inc. Derivative Litigation*,
  No. CV 2017-0222, 2019 WL 4850188 (Del. Ch. Oct. 1, 2019).....................17, 34

*In re Crimson Exploration Inc. Stockholder Litigation*,
  No. 8541, 2014 WL 5449419 (Del. Ch. Oct. 24, 2014)........................................34

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009).................................................................................23

*Guttman v. Huang*,
  823 A.2d 492 (Del. Ch. 2003)..............................................................................25

*Heineman v. Datapoint Corp.*,
  611 A.2d 950 (Del. 1992) *overruled on other grounds by*
  *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ................................................27, 28

*IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v.*
  *Royal Bank of Scotland Group, PLC,*
  783 F.3d 383 (2d Cir. 2015)...........................................................................23, 24

*Kavanagh v. Zwilling,*
  578 F. App'x 24 (2d Cir. 2014) ............................................................................16

*Knox v. Rosenberg,*
  No. CIV. A. H-99-0123, 1999 WL 35233291 (S.D. Tex. Sept. 28, 1999).......................28, 32

*In re Liquidity Services, Inc.,*
  No. 2017-0080, 2017 WL 5735453 (Del. Ch. Nov. 27, 2017) ................................................25

*Malin v. XL Capital Ltd.,*
  499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd,* 312 F. App'x 400 (2d Cir. 2009)......................17

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,*
  845 A.2d 1040 (Del. 2004) .............................................................................3, 27, 28

*McElrath v. Kalanick,*
  224 A.3d 982 (Del. 2020) .............................................................................20, 22

*Merholz v. McMahon,*
  No. 3:20-CV-00557, 2020 WL 6546007 (D. Conn.
  Nov. 6, 2020) .......................................................2, 4, 12-13, 18-20, 24-25, 32, 34

*In re Merrill Lynch & Co. Research Reports Securities Litigation,*
  No. 02 CIV. 8472, 2008 WL 2594819 (S.D.N.Y. June 26, 2008).........................................16

*Monroe County Employees' Retirement System v. Carlson,*
  No. 4587, 2010 WL 2376890 (Del. Ch. June 7, 2010) .........................................................30

*Moss v. Stinnes Corp.,*
  No. 92 CIV. 3788, 1997 WL 530113 (S.D.N.Y. Aug. 25, 1997), *aff'd,*
  169 F.3d 784 (2d Cir. 1999)...................................................................................16

*In re New Oriental Education & Technology Group Securities Litigation,*
  988 F. Supp. 2d 406 (S.D.N.Y. 2013)....................................................................23

*New York Life Insurance. Co. v. Sahani,*
  730 F. App'x 45 (2d Cir. 2018) ...............................................................................15

*In re Nyfix, Inc. Derivative Litigation,*
  567 F. Supp. 2d 306 (D. Conn. 2008)....................................................................19

*Peco Logistics, LLC v. Walnut Inv. Partners, L.P.,*
  No. CV 9978, 2015 WL 9488249 (Del. Ch. Dec. 30, 2015) .................................................30

*Pension Fund v. Haley,*
  235 A.3d 702 (Del. 2020) ......................................................................................23

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993) ...........................................................................27

*Solomon v. Armstrong*,
   747 A.2d 1098 (Del. Ch. 1999), *aff'd*, 746 A.2d 277 (Del. 2000) ............................29

*Solomon v. Pathe Commons Corp.*,
   No. 12563, 1995 WL 250374 (Del. Ch. Apr. 21, 1995), *aff'd*,
   672 A.2d 35 (Del. 1996) ...........................................................................31

*In re Synchrony Financial Securities Litigation*,
   450 F. Supp. 3d 127 (D. Conn. 2020) ....................................................33

*Tilden v. Cunningham*,
   No. 2017-0837, 2018 WL 5307706 (Del. Ch. Oct. 26, 2018) ................34

*In re TrueCar, Inc. Stockholder Derivative Litigation*,
   No. CV 2019-0672, 2020 WL 5816761 (Del. Ch. Sept. 30, 2020) .........22

*United States v. Glens Falls Newspapers, Inc.*,
   160 F.3d 853 (2d Cir. 1998)........................................................................15

*Wood v. Baum*,
   953 A.2d 136 (Del. 2008) ..........................................................................24

**Statutes**

8 Del. C. § 141(e)........................................................................................24

Defendants Vincent K. McMahon, George A. Barrios, Michelle D. Wilson, Stephanie McMahon, Paul Levesque, Frank A. Riddick, III, Stuart U. Goldfarb, Laureen Ong, Robyn W. Peterson, Man Jit Singh, Jeffrey R. Speed, Alan M. Wexler, Patricia A. Gotteeman and Nominal Defendant World Wrestling Entertainment, Inc. ("WWE") (collectively, "Defendants") respectfully submit this Memorandum of Law in Opposition to Dennis Palkon's ("Palkon") Motion for Permissive Intervention, Appointment of Lead Counsel, and Denial of Defendants' Motions to Dismiss as Moot (*Merholz* ECF No. 68; *Kooi* ECF No. 80; *Nordstrom* ECF No. 71).

## PRELIMINARY STATEMENT

On November 6, 2020, this Court dismissed all three shareholder derivative lawsuits filed against Defendants because Plaintiffs failed to allege facts necessary to establish demand futility. The Court further held that these actions would be dismissed *with prejudice* unless Palkon's motion to intervene and proposed complaint—prepared with the benefit of information received from WWE's corporate books and records— changed the Court's conclusion.

Palkon cannot avoid dismissal of these actions with prejudice because his proposed complaint fails to remedy the pleading deficiencies previously identified by the Court. Indeed, Palkon's proposed complaint is even *more* deficient than the complaints already dismissed by the Court because the materials on which it relies confirm that there is *no factual basis* to allege demand futility or to assert *any* viable claims against Defendants. Palkon's attempt to intervene in these actions is therefore futile and improper.

As an initial matter, Palkon has an even higher burden to establish demand futility than the other Plaintiffs because WWE has added two additional independent outside directors since the complaints in those actions were filed—meaning that 9 of the 12 current members of the Board are independent. Palkon cannot establish demand futility as to the current Board because

-1-

he fails to plead any particularized facts showing that a majority of its directors could not independently consider and evaluate a demand—and the documents WWE produced to Palkon in response to his demand to inspect its corporate records under Section 220 of the Delaware General Corporation Law conclusively refute any such claim.

Like Plaintiffs, Palkon attempts to plead demand futility by claiming that a majority of Board members face a substantial likelihood of personal liability for purported breaches of fiduciary duty.  To meet this burden, this Court has held that plaintiffs must plead that the directors had "knowledge that their conduct was legally improper" and allege "particularized facts" showing that the directors "knowingly disseminat[ed] materially false information" and "were deliberately misinforming shareholders."  *Merholz v. McMahon*, No. 3:20-CV-00557, 2020 WL 6546007, at *8-9 (D. Conn. Nov. 6, 2020) (internal quotation marks and citations omitted).  Palkon's proposed complaint completely misses the mark.

Like Plaintiffs, Palkon alleges that certain of the independent outside directors breached their fiduciary duties by reviewing and approving public statements that did not mention the early termination of WWE's media rights agreement with Orbit Showtime Network ("OSN"). But like Plaintiffs, Palkon also fails to plead *any facts* showing that any of the independent outside directors had actual knowledge of both the early termination of the OSN agreement and that WWE's public statements were materially false or misleading for not disclosing the early termination of that agreement. ██████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

-2-

█████████████████████████████████████████████ Accordingly, Palkon's allegations do not come close to pleading facts necessary to show that the independent outside directors face a substantial likelihood of personal liability in connection with the omission of the early termination of the OSN agreement from WWE's public disclosures, and Palkon does not—and could not—claim that the independent outside directors face a substantial likelihood of liability in connection with any other alleged misstatements.

Because Palkon cannot demonstrate demand futility on the theory that WWE's independent outside directors face a substantial likelihood of personal liability, Palkon resorts to the wholly unsupported claim that demand is futile because the Board is purportedly dominated and controlled by Vince McMahon.  To plead demand futility on this theory and overcome the presumption of director independence, Palkon must plead facts showing that the independent outside directors were so "beholden" to McMahon that their discretion was "sterilized" and they "would be more willing to risk [their] reputation than risk [their] relationship" with him.  *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1050-52 (Del. 2004).

Palkon's allegations fall far short of meeting these demanding standards.  Palkon's allegations concerning McMahon's status as a controlling shareholder are legally insufficient to show domination and control over the Board under settled Delaware law.  And Palkon's only attempt to allege a concrete example of purported domination and control—the Board's approval of WWE's sale of XFL intellectual property to a company formed by McMahon to launch the XFL—actually shows that the Board functions independently.  ██████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████ Far from demonstrating that McMahon dominates and controls the Board, the corporate records produced to Palkon demonstrate precisely the opposite—that the Board can independently evaluate and consider a demand.

Palkon's proposed complaint fails to adequately plead demand futility or any viable claims against the Defendants. Because Palkon's complaint is legally insufficient—and indeed even more defective than the complaints filed by the other Plaintiffs despite having the benefit of information from WWE's corporate books and records—the Court should deny Palkon's motion to intervene and dismiss these shareholder derivative actions with prejudice.

## FACTUAL BACKGROUND

### I. WWE's Board of Directors

At the time Plaintiffs filed their complaints in these actions, WWE's Board of Directors ("Board") had 10 members. Four members—Vincent McMahon ("McMahon"), Stephanie McMahon, Paul Levesque, and Frank Riddick III—served as both members of the Board and officers of WWE. Six members— Stuart Goldfarb, Laureen Ong, Robyn Peterson, Man Jit Singh, Jeffrey Speed, and Alan Wexler—served on the Board as independent directors. *See Merholz v. McMahon*, No. 3:20-CV-00557, 2020 WL 6546007, at *8 (D. Conn. Nov. 6, 2020).

The Board now consists of 12 members. (Proposed Compl. ¶ 165.) On September 1, 2020, Steve Pamon was elected to the Board as an independent outside director. (Ex. 1.)[1] On October 5, 2020, Erika Nardini was elected to the Board as an independent outside director. (Ex. 2.) Frank Riddick's term as interim Chief Financial Officer, which began in January 2020, ended in August 2020 such that he is again an independent outside director. (Ex. 3.) As a result, 9 of the 12 Board members are now independent outside directors.

---

[1] All exhibits are attached to the Declaration of Jeffrey P. Mueller filed herewith.

## II.     The XFL Transaction

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

² As explained below, the materials provided to Palkon in connection with his Section 220 request for corporate books and records can be considered by the Court because they are incorporated by reference into his motion and Proposed Complaint.



Palkon attempts to suggest that the Board undervalued the XFL

Intellectual Property by relying on a draft marketing plan prepared by a former business partner

of Dick and Charlie Ebersol that was included as an exhibit to a complaint filed in a California

action captioned *Vanech v. Ebersol* ("*Vanech* Complaint").  (Proposed Compl. ¶ 50.)  Palkon

reproduces a slide from that draft marketing plan that discusses a potential purchase of "all XFL

assets" from WWE for "$50MM paid as a combination of cash and stock."  (*Id.* (quoting Ex. 20,

*Vanech* Complaint, Ex. A).)  Palkon further alleges that the Ebersols met with McMahon to

discuss "a possible XFL deal" on May 18, 2017.  (Proposed Compl. ¶ 51.)

But Palkon does *not* allege that the Ebersols ever made McMahon an offer to purchase

the XFL Intellectual Property.  Nor could Palkon make any such allegation because he knows

from a sworn affidavit provided by Charlie Ebersol that the Ebersols never "offer[ed] Vince

McMahon $50 million or any other amount of money to acquire the XFL trademark at our

meeting on May 18, 2017 or at any time."  (Ex. 21 ¶ 5.)  Moreover, the *Vanech* Complaint on

which Palkon relies states that the meeting with McMahon "did not result in a licensing deal or

any other agreement" with WWE or McMahon and that the draft marketing plan was never

pursued.  (Ex. 20, *Vanech* Complaint ¶¶ 85-92.)

-7-

███████████████████████████████████████████████████████████

███████████████████████████████████████████████

### III.   The OSN Agreement

During 2018 and 2019, WWE management regularly met with the Board to update them on WWE's business performance and plans. ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████

#### A.   The February 2018 Board of Directors Meeting

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

#### B.   The October 2018 Board of Directors Meeting

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

C.      **The January 2019 Board of Directors Meeting**

███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

D.      **The April 2019 Board of Directors Meeting**

███████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████      ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

**IV.    The Agreement in Principle**

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ WWE

management made the following statement to investors on July 25, 2019:

> The guidance assumes continued improvement in WWE's engagement metrics, a second large scale event in the MENA region, and the completion of a media rights deal in the MENA region.  The Company believes it has agreements in principle with the Saudi General Sports Authority on the broad terms for the latter two items; however, this understanding is nonbinding.  It is possible that either or both of these business developments do not occur on expected terms and/ or that engagement does not improve as assumed.  The Company has evaluated these potential outcomes and currently believes that the most likely downside to its Adjusted OIBDA would be approximately $10 million to $20 million below its current outlook.

(Ex. 27 at 7.)  Palkon does not allege any facts—and the Board materials do not indicate—that the Board was provided with any information that would call into question the accuracy of these statements at the time they were made in July 2019.

During an earnings call on July 25, 2019, Barrios also disclosed that "[i]n the Middle East, our pay TV agreement [the OSN agreement] has been terminated, but our free-to-air agreement continues to be in place."  (Proposed Compl. ¶ 123).  Following this announcement, WWE's stock price *increased*.  (Ex. 28.)

## V.     Procedural History

### A.     Plaintiffs' Complaints

On April 24, 2020, Plaintiffs Ryan Merholz and Melvyn Klein filed a shareholder derivative action in the District of Connecticut.  *See Merholz et al. v. McMahon, et al.*, No. 3:20-cv-00557 (D. Conn.) (ECF No. 1).  The *Merholz* plaintiffs filed an amended complaint on June 19, 2020 and a second amended complaint on July 28, 2020.  (*Merholz* ECF Nos. 7, 39-1.)

On May 7, 2020, Plaintiff Daniel Kooi filed a copycat shareholder derivative action in Connecticut Superior Court that was removed to federal court on June 1, 2020.  *See Kooi v. McMahon et al.*, No. 3:20-CV-00743-VAB (D. Conn.) (ECF No. 1).  Kooi filed an amended complaint on July 3, 2020.  (*Kooi* ECF No. 36.)

On June 3, 2020, Plaintiff Rodney Nordstrom filed another copycat shareholder derivative action in Connecticut Superior Court that was removed to federal court on July 1, 2020.  *See Nordstrom v. McMahon et al.*, No. 3:20-CV-00904-VAB (D. Conn.) (ECF No. 1). Nordstrom also filed an amended complaint on August 14, 2020.  (*Nordstrom* ECF No. 45.)

Contrary to Palkon's claim in his motion to intervene, Defendants did not accelerate the filing of their motions to dismiss.  Defendants actually sought and obtained extensions of time to file their motions to dismiss in each of the three actions to provide Plaintiffs with an opportunity to amend their complaints and to consolidate briefing on the motions to dismiss.  (*Merholz* ECF No. 14, 41.)  On August 1, 2020, the Court issued a briefing schedule that required motions to dismiss in all three cases to be filed by August 28, 2020.  (*Merholz* ECF No. 43.)

On August 28, 2020, Defendants filed their motions to dismiss each of the three complaints in accordance with the Court's briefing schedule.  (*Merholz* ECF No. 57.) Defendants moved to dismiss the complaints on the grounds that (i) Plaintiffs failed to make a pre-suit demand on WWE's Board of Directors or adequately plead that demand was futile; (ii)

Plaintiffs failed to plead with particularity that they owned WWE stock continuously from the date of the conduct alleged in the complaints through the present time; and (iii) Plaintiffs failed to state a claim on which relief can be granted.  (*Merholz* ECF No. 57-1.)  On October 29, 2020, this Court heard oral argument on the pending motions to dismiss.  (*Merholz* ECF No. 78.)

>        **B.**        **The Court's Dismissal of Plaintiffs' Complaints**

On November 6, 2020, this Court granted Defendants' motions to dismiss the *Merholz*, *Kooi*, and *Nordstrom* lawsuits.  This Court found that "all three lawsuits fail to satisfy the demand futility requirement, and the *Merholz* lawsuit additionally fails for lack of standing." *Merholz v. McMahon*, No. 3:20-CV-00557, 2020 WL 6546007, at *1 (D. Conn. Nov. 6, 2020).

The Court held that Plaintiffs failed to plead demand futility because they failed to allege particularized facts showing that any of WWE's six outside directors at that time (Goldfarb, Ong, Peterson, Singh, Speed, and Wexler) faced a substantial likelihood of personal liability on any of the claims alleged in their complaints under the applicable standards of governing Delaware law. *Id.* at *8-11.  The Court concluded that Plaintiffs failed to plead that the outside directors "acted inconsistent with [their] fiduciary duties and, most importantly, that the director[s] *knew* [they were] so acting."  *Id.* at *8 (internal quotation marks and citations omitted).  The Court rejected Plaintiffs' argument that the outside directors faced a substantial likelihood of liability "because of their signatures on WWE's 2018 10-K filings" or "their membership on WWE's Audit Committee."  *Id.*  The Court found "[t]here is nothing in the conclusory allegations in any of the three Complaints suggesting that any of these outside directors had actual or constructive knowledge that their conduct was legally improper."  *Id.* (internal quotation marks and citation omitted).  As to Plaintiffs' breach of fiduciary duty claim, the Court concluded that Plaintiffs' "conclusory allegations fall short of the particularized facts necessary to allege that the Outside

Directors (i) knowingly disseminat[ed] materially false information and (ii) were deliberately misinforming shareholders." *Id.* at \*9 (internal quotation marks and citations omitted).

Accordingly, the Court concluded that "Plaintiffs have failed to satisfy the demand futility requirement, and their claims against the Defendants must be dismissed on that basis." *Id.* at \*11. The Court also dismissed the claims in the *Merholz* complaint for lack of standing because "Plaintiffs had not properly pled the requisite length of stock ownership." *Id.* at \*12. Because the Court "decided that all three lawsuits fail for at least one reason, the Court [did] not address the issue of whether Plaintiffs also fail to state a claim, even though Defendants' motion in this respect mirrors some of the demand futility arguments." *Id.*

Because of Palkon's pending motion to intervene, however, the Court decided to "await resolution of that motion and its underlying claims before deciding whether the dismissal of these three cases are with prejudice." *Id.* at \*13.

### C.    Palkon's Section 220 Demand and Intervention Motion

On May 6, 2020, Palkon served his Section 220 demand seeking an inspection of WWE's corporate books and records. Two weeks later, on May 20, 2020, WWE's counsel sent its initial response to the demand. Palkon did not respond to WWE's letter until over a month later on June 17, 2020. Although Palkon and WWE initially agreed on a scope of production of documents in response to the demand, Palkon subsequently insisted on a more expanded scope.

On August 18, 2020, WWE retained Paul Weiss to represent it in these cases and other related actions. Paul Weiss immediately reached out to Palkon's counsel and had their first substantive discussion with Palkon's counsel about his Section 220 demand the following day. By September 24, 2020, the parties had reached an agreement on the scope and parameters of the WWE's document production in response to Palkon's demand.

By October 1, 2020, the parties executed a Confidentiality Agreement, dated as of September 24, 2020, governing the documents to be produced to Palkon in response to his Section 220 demand. The Confidentiality Agreement provided:

> 13.   *In the event that Stockholder or Stockholder's Counsel (on behalf of Stockholder) uses, or refers to, any information or documents produced by the Company in response to the Demand in any complaint, petition, or other court filing relating to the subject matter referenced in the Demand, then the documents and information that (a) the Company agrees to produce to Stockholder* within the scope of the categories of documents and information that the Company has agreed to produce, and/or (b) may be ordered to produce to Stockholder in any Section 220 proceeding relating to the Demand *shall be deemed incorporated by reference into the filing (the "Incorporation Condition")*. Before the Incorporation Condition applies to the documents and information the Company agrees to produce, the Company's counsel shall provide the certification required by Paragraph 14; provided, however, that *if Stockholder or Stockholder's Counsel files any complaint, petition, or other court filing relating to the subject matter referenced in the Demand,* other than (x) a complaint pursuant to Section 220 or (y) a motion to intervene in a derivative action relating to the subject matter of the Demand filed by a different purported stockholder of the Company in a jurisdiction outside of the State of Delaware for the limited purpose of staying such action, *before* (i) the Company has completed the production of all documents and information it agrees to produce and/or (ii) *the time period for providing the certification required by Paragraph 14 has expired, then the Incorporation Condition shall automatically apply to the documents and information that the Company has produced pursuant to its agreement at the time of such filing.* This Paragraph 13 does not change the pleading standard applicable to any motion to dismiss filed in any plenary action relating to the subject matter of the Demand.
>
> 14.   Within five (5) business days of the final completion of the production of non-privileged documents that the Company agrees to produce voluntarily in response to the Demand, the Company's counsel will provide written confirmation that, to the best of its knowledge and following a reasonable investigation, the Company's production is complete with respect to every category of documents that the Company has agreed to produce.

(Ex. 29 ¶¶ 13-14 (emphasis added).)  Between October 6, 2020 and October 16, 2020, WWE completed a rolling production of documents in response to Palkon's demand. On October 23, 2020, WWE certified completion of the document production in accordance with the terms of the Confidentiality Agreement.

-14-

On October 9, 2020, Palkon sent an off-the-record letter to the Court requesting that the Court defer ruling on Defendants' pending motions to dismiss or that Plaintiffs' claims be dismissed without prejudice.  (*Merholz* ECF No. 65.)  On October 14, 2020, Defendants submitted a response to Palkon's letter to the Court.  (*Merholz* ECF No. 65-1.)

On October 23, 2020, Palkon finally moved to intervene as a party in these actions and submitted a Proposed Complaint that incorporates the documents produced in response to his Section 220 demand.  (*Merholz* ECF No. 68, 69-1.)  The Proposed Complaint alleges that Defendants made false and misleading statements to investors concerning WWE's media rights deal in the Middle East and asserts claims of breach of fiduciary duty and unjust enrichment. (Proposed Compl.  ¶¶ 98-126, 177-185.)  The Proposed Complaint claims that demand is excused because a majority of the Board faces a substantial likelihood of liability for breach of fiduciary duty in connection with the omission of the early termination of the OSN agreement from WWE's public disclosures in February 2019 and April 2019.  (*Id.* ¶¶ 166-169.)  The Proposed Complaint also asserts the novel theory that demand is excused because the Board is dominated and controlled by McMahon and relies on the Board's approval of the sale of the XFL Intellectual Property in early 2018 to claim that the Board lacks independence.  (*Id.* ¶¶ 170-176.)

## ARGUMENT

Palkon's motion to intervene should be denied on futility grounds because his Proposed Complaint fails to adequately plead demand futility and fails to state a claim for relief.

## I.      Futility Is a Proper Ground for Denying a Motion to Intervene

A motion to intervene can be denied on futility grounds where the proposed intervention complaint is legally insufficient.  *See N.Y. Life Ins. Co. v. Sahani*, 730 F. App'x 45, 50 (2d Cir. 2018) (upholding district court's denial of motion to intervene "on the grounds of futility" because the proposed intervenor "asserted no viable claims"); *United States v. Glens Falls*

*Newspapers, Inc.*, 160 F.3d 853, 854 (2d Cir. 1998) (upholding district court's denial of motion intervene on futility grounds); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 CIV. 8472, 2008 WL 2594819, at *4–5 (S.D.N.Y. June 26, 2008) ("Although legal futility is not mentioned in Rule 24, courts have held that futility is a proper basis for denying a motion to intervene.") (collecting cases); *Moss v. Stinnes Corp.*, No. 92 CIV. 3788, 1997 WL 530113, at *1 (S.D.N.Y. Aug. 25, 1997) (holding that proposed intervenor's "motion to intervene is denied because his proposed claims in intervention fail to state a valid claim for relief"), *aff'd*, 169 F.3d 784 (2d Cir. 1999); *Ceribelli v. Elghanayan*, No. 91 CIV. 3337, 1994 WL 529853, at *2 (S.D.N.Y. Sept. 28, 1994) ("An alternative basis for rejecting a proposed intervention under Rule 24, or an amended pleading under Rule 15, is legal futility.").

## II.    Standard for Assessing Futility of Motion to Intervene

"[I]n considering the sufficiency of the proposed Intervention Complaint, the Court employs the same standards as it would apply in considering a motion to dismiss for failure to state a valid claim." *In re Merrill Lynch & Co.*, 2008 WL 2594819, at *5.  In considering a motion to dismiss, the Court accepts well-pleaded factual allegations as true, but does "not accept as true conclusions unsupported by the facts alleged, legal conclusions, bald assertions, or unwarranted inferences." *Kavanagh v. Zwilling*, 578 F. App'x 24, 24 (2d Cir. 2014).  In applying these standards, the Court can consider the following materials:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 129 (D. Conn. 2007), *aff'd,* 312 F. App'x 400 (2d Cir. 2009) (internal quotation marks and citations omitted).

"[W]here, as here, the nominal defendant has produced documents in response to a demand for books and records under 8 *Del. C.* § 220 on the condition that such documents be deemed incorporated by reference in any complaint that might be filed, the court may consider the documents in their entirety rather than rely only [on] the portions 'cherry-picked' by the plaintiff."  *In re Clovis Oncology, Inc. Derivative Litig.*, No. CV 2017-0222, 2019 WL 4850188, at *2 n.8 (Del. Ch. Oct. 1, 2019) (quoting *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 797 (Del. Ch. 2016)).  Incorporation by reference of the documents produced in response to a Section 220 demand ensures that "any complaint that [the plaintiff] files will not be based on cherry-picked documents" and that "the plaintiff cannot seize on a document, take it out of context, and insist on an unreasonable inference that the court could not draw if it considered related documents."  *Amalgamated Bank*, 132 A.3d at 797-98.

Here, Palkon and WWE expressly agreed that all documents WWE produced to Palkon in response to his Section 220 demand would be incorporated by reference into his motion and Proposed Complaint.  (Ex. 29 ¶¶ 13-14.)  These documents also were "automatically" incorporated into Palkon's Proposed Complaint under the terms of the Confidentiality Agreement because Palkon moved to intervene as a party in this action before the time period for certifying completion of the production expired.  (*Id.*)  In addition, Palkon acknowledges that he reviewed the books and records produced by WWE in response to Section 220 demand and relied upon those documents in preparing his Proposed Complaint.  (Proposed Compl. at 1.) Accordingly, this Court can consider those documents in evaluating Palkon's motion to intervene and determining whether his Proposed Complaint is legally sufficient.

III.    **Palkon's Proposed Complaint Fails to Plead Demand Futility.**

Palkon's Proposed Complaint is legally insufficient because he has failed to adequately

plead demand futility with the requisite particularity.

A.    **Standards for Pleading Demand Futility**

This Court's decision dismissing these shareholder derivative actions sets forth the

controlling legal standards for pleading demand futility under applicable Delaware law.

"Under Delaware law, the board of directors manages the business and affairs of the

corporation, which includes deciding whether the corporation should pursue litigation against

others." *Merholz v. McMahon*, No. 3:20-CV-00557, 2020 WL 6546007, at *6 (D. Conn. Nov. 6,

2020) (internal quotation marks and citation omitted).   "To protect the directors' managerial

authority, a stockholder must comply with Court of Chancery Rule 23.1, which requires that [a]

stockholder first make a demand on the board to pursue the claim, and, if the board declines,

attempt to demonstrate that the directors wrongfully refused the demand." *Id.* (internal quotation

marks and citation omitted).   "This demand requirement affords the corporation the opportunity

to address an alleged wrong without litigation and to control any litigation which does occur."

*Id.* (internal quotation marks and citation omitted).

"Nevertheless, compliance with the demand requirement is not necessary if the

stockholder can allege with sufficient particularity that demand is futile and should be excused

due to a disabling conflict by a majority of the directors to consider the demand." *Id.* (internal

quotation marks and citation omitted).   "In considering whether the demand futility requirement

has been met, the court must consider:  (1) whether any directors were interested, *i.e.*, would face

a substantial likelihood of personal liability for the conduct alleged in the complaint; (2) if the

court determines that any directors were interested, the court considers whether any other

directors were not independent of an interested director; and (3) [a]fter tallying the results,

whether a majority of the board in place when the complaint was filed was disinterested and independent [and, if so] the stockholder must first make a demand on the board before pursuing litigation on the corporation's behalf."  *Id.* (internal quotation marks and citation omitted).

"Finally, with respect to pleading demand futility, if a corporation's certificate of incorporation exculpates its directors from monetary liability for fiduciary duty breaches to the fullest extent permitted by the Delaware General Corporation Law [then] the plaintiff must plead with particularity that the directors acted with scienter, meaning they had actual or constructive knowledge that their conduct was legally improper."  *Id.* at *7 (internal quotation marks, citations, and alterations omitted).

Palkon must demonstrate demand futility as to WWE's Board of Directors in place at the time his proposed complaint is filed.  *See Brody v. Chem. Bank*, 517 F.2d 932, 934 (2d Cir. 1975); *In re Nyfix, Inc. Derivative Litig.*, 567 F. Supp. 2d 306, 312 (D. Conn. 2008); *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006).  Palkon has an even higher burden to plead demand futility than Plaintiffs had because two more independent directors (Pamon and Nardini) joined the Board after those complaints were filed.  Accordingly, 9 of the 12 current directors on the Board are independent:  Defendants Riddick, Speed, Goldfarb, Ong, Peterson, Singh, and Wexler and Non-Defendants Pamon and Nardini (collectively, the "Outside Directors").  Palkon must plead facts with particularity establishing that at least 6 of the 12 current directors could not independently evaluate a demand.  Palkon attempts to plead demand futility based on two theories: (1) that the majority of the Board faces a substantial likelihood of liability, and (2) that the Board is not independent because it is dominated and controlled by Vince McMahon. (Proposed Compl. ¶¶ 166-169.)  Palkon fails to allege facts necessary to establish either theory.

**B.  Palkon Fails To Plead That The Outside Directors Face a Substantial Likelihood of Liability.**

Palkon fails to plead particularized facts showing that any of the Outside Directors face a substantial likelihood of liability on either of the two claims asserted in his Proposed Complaint.

**1.  No Outside Director Faces A Substantial Likelihood of Liability for Breach of Fiduciary Duty.**

Like Plaintiffs, Palkon alleges that the Outside Director Defendants face a substantial likelihood of personal liability for purportedly breaching their fiduciary duty of loyalty by reviewing and approving statements in WWE press releases and SEC filings in February 2019 and April 2019 that "failed to disclose the termination of the OSN deal and claimed that the lack of a renewal was merely a 'risk' despite this material event already occurring."  (Proposed Compl. ¶¶ 166-68.)

As this Court held in dismissing the claims of Plaintiffs, to establish a substantial likelihood of personal liability on such claims, a plaintiff must plead facts showing that the Outside Directors "had actual or constructive knowledge that their conduct was legally improper."  *Merholz*, 2020 WL 6546007, at *8 (internal quotation marks and citation omitted). A plaintiff must plead "particularized facts necessary to allege that the Outside Directors (i) *knowingly* disseminat[ed] materially false information and (ii) were *deliberately* misinforming shareholders."  *Id.* at *9 (emphasis added) (internal quotation marks and citation omitted). Moreover, "because WWE has exculpate[d] its directors from monetary liability for fiduciary duty breaches to the fullest extent permitted by Delaware General Corporation Law, Plaintiffs must allege that a director acted inconsistent with his fiduciary duties and most importantly, that the director *knew* he was so acting."  *Id.* at *8 (internal quotation marks and citations omitted); *see also McElrath v. Kalanick,* 224 A.3d 982, 991-92 (Del. 2020) (stating that a plaintiff must

plead that directors acted in "bad faith" or that their conduct was "motivated by an actual intent to do harm") (internal quotation marks and citation omitted).

Palkon fails to allege with particularity that any of the Outside Directors face a substantial likelihood of liability for alleged breaches of fiduciary duty under these demanding standards. Palkon does not assert any claim against the two non-defendant Outside Directors (Pamon and Nardini) and therefore cannot establish a substantial likelihood of liability as to them. And Palkon fails to plead *any* particularized facts demonstrating that the remaining seven Outside Directors knew that any of the alleged statements were materially false or misleading—much less that they acted with bad faith or actual intent to deceive shareholders in not disclosing the early termination of the OSN agreement. Rather, Palkon's own allegations and the documents on which he relies confirm that he *cannot* plead such facts.

***First***, Palkon has failed to plead facts supporting any inference that the Outside Directors knew before July 2019 that the OSN agreement was terminating early in March 2019 (rather than December 2019).





These few vague references to OSN within thousands of pages of Board materials do not come close to showing that any of the Outside Director Defendants had *actual knowledge* that the OSN agreement was terminating early in March 2019.  Delaware courts have held that the inferences Palkon asks this Court to draw are unreasonable.  In *In re TrueCar, Inc. Stockholder Derivative Litigation,* the Delaware Court of Chancery held that "vague references in the Board materials" to the "fragile" relationship with a company's affinity partner and its "underperformance" were insufficient as a matter of law to infer that directors had knowledge that company expected to lose sales from that partner after it launched a significant website redesign given "the absence of any direct reference to the [partner's] website or its redesign" and the fact that "the forecast in the Board package provided no indication that [the company] expected its sales from [the partner] to be adversely impacted."  No. CV 2019-0672, 2020 WL 5816761, at *14–15, *17 (Del. Ch. Sept. 30, 2020).  Mere allegations that the Outside Directors *should have* known of the early termination of the OSN agreement from these materials are insufficient to plead actual knowledge.  *See McElrath*, 224 A.3d at 993 ("It is not enough to allege that the directors should have been better informed—a due care violation exculpated by the corporation's charter provision.").

***Second***, Palkon has failed to plead that the Outside Directors Defendants knew that the OSN agreement would have had a *materially* adverse effect on WWE's financial performance such that its early termination in March 2019 must have been disclosed to stockholders. ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ Accordingly, even assuming that Outside Directors had known of the early termination of the OSN agreement, they would have no reason to believe such a small revenue loss was material to WWE's financial performance and should have been disclosed. *See IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 390 (2d Cir. 2015) (holding that an alleged misstatement relating to less than 5% of a company's assets or revenues "carries the preliminary assumption of immateriality"); *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009) ("[A]n alleged misrepresentation relating to less than two percent of defendant's assets, when taken in context, could be immaterial as a matter of law.") (collecting cases); *In re New Oriental Educ. & Tech. Grp. Sec. Litig.,* 988 F. Supp. 2d 406, 422–23 (S.D.N.Y. 2013) ("Where misstatements implicate less than 5% of an entity's revenue, the misstatements are not likely to be material."); *City of Fort Myers Gen. Emps.' Pension Fund v. Haley*, 235 A.3d 702, 729 n.61 (Del. 2020) (noting that "Delaware has adopted the federal standard for materiality in the shareholder disclosure context"). Nor would the Outside Directors have had any reason to believe that the OSN agreement was qualitatively material. ████████████████████

████████████████████████████████████████████████████

Indeed, Palkon fails to allege any particularized facts explaining why the status of the OSN contract would have been material to investors. *See IBEW*, 783 F.3d at 391 (holding that plaintiffs failed to plead 4% misstatement of assets was qualitatively material because they failed to allege that the misstatement "masks a change in earnings, changes a loss into income or vice versa, or involves an unlawful transaction, or that the misstatements resulted in a significant positive market reaction"). Accordingly, Palkon cannot plead that the Outside Directors knowingly disseminated any *materially* false or misleading statements to WWE stockholders.

As this Court held in dismissing the claims of the other Plaintiffs, mere allegations that some of the Outside Directors reviewed, commented on, or approved the disclosures (Proposed Compl. ¶¶ 167-168) are insufficient to show that the Outside Directors face a substantial likelihood of personal liability. *See Merholz*, 2020 WL 6546007, at *11 ("[N]either the signing of the 10-K filings nor the participation on the Audit Committee otherwise support demand futility here."); *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) (holding that Board's execution or approval of financial statements alone "is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors"); *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009) (holding that mere allegations that financial disclosures "contained false statements and material omissions and that the director defendants reviewed the financial statements pursuant to their responsibilities" were insufficient to show that "the director defendants face a substantial likelihood of liability").

Indeed, the Board is fully protected from liability under the Delaware General Corporation Law based on its reasonable reliance on the information that it was provided by members of WWE's management. *See* 8 *Del. C.* § 141(e) (stating that a board member shall be

"fully protected in relying in good faith upon the records of the corporation and upon such information" presented by management); *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996) ("[T]he duty to act in good faith to be informed cannot be thought to require directors to possess detailed information about all aspects of the operation of the enterprise.").  Nothing in the Proposed Complaint or the Section 220 documents suggests that WWE's management informed the Board that the early termination of the OSN should have been disclosed or that the Board disregarded such reports.

As this Court held in dismissing the claims of the other Plaintiffs, Palkon also cannot rely on Judge Rakoff's decision denying the motion to dismiss in the Securities Class Action (Proposed Compl. ¶ 166) to claim that Outside Directors face a substantial likelihood of personal liability because they were not even named as defendants in that action.  *See Merholz*, 2020 WL 6546007, at *10 (stating that Plaintiffs cannot rely on the lawsuit before Judge Rakoff because it "does not involve these six Defendants, outside directors, but instead WWE and its corporate executives"); *Guttman v. Huang,* 823 A.2d 492, 504 (Del. Ch. 2003) (stating that pending securities actions were not relevant to demand futility analysis where "none of [the outside director] defendants [was] even named as a defendant in the pending federal securities suits"); *In re Liquidity Servs., Inc.*, No. 2017-0080, 2017 WL 5735453, at *4 (Del. Ch. Nov. 27, 2017) ("[I]f a director is not even named as a defendant in the pending federal securities suit, then this court can disregard the allegations in the federal securities action when evaluating the director's ability to consider a demand.") (internal quotation marks and citation omitted).  Moreover, the information from the Section 220 documents refuting Palkon's claims was not presented to the court in the Securities Class Action.

Accordingly, Palkon's claim that the Outside Directors face a substantial likelihood of personal liability for purported breaches of fiduciary duty in connection with the omission of the early termination of the OSN agreement from the February 2019 and April 2019 public disclosures fails.  And Palkon does not claim that the Outside Directors face a substantial likelihood of personal liability in connection with any other alleged misstatements.  (*See* Proposed Compl. ¶¶ 166-168.)  For example, Palkon does not allege that the Outside Directors face a substantial threat of personal liability for the July 2019 public disclosures regarding the "agreement in principle" with GSA.  ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████  Palkon does not allege any facts—and the Board materials do not show—that the Outside Directors were provided with any information that would call into question the accuracy of these statements at the time they were made.

### 2. No Outside Director Faces A Substantial Likelihood of Liability for Unjust Enrichment.

Palkon also fails to plead that any of the Outside Directors face a substantial likelihood of personal liability for unjust enrichment.  Palkon's unjust enrichment claim is based on his allegations that Defendants Vince McMahon, Barrios, Wilson, and Gottesman profited from the sale of WWE stock "while in possession of material, nonpublic information that artificially inflated the price of WWE stock."  (Proposed Compl. ¶ 183.)  Because Palkon does not assert the unjust enrichment claim against any of the Outside Directors, he cannot establish that they face *any* potential liability on this claim—much less a substantial likelihood of liability.  *See In re*

*China Auto. Sys. Inc. Derivative Litig.,* No. 7145, 2013 WL 4672059, at \*10 (Del. Ch. Aug. 30, 2013) (holding that plaintiffs failed to plead that a majority of the board "engaged in, or gained a material benefit from, any insider trading" and "therefore, they were not interested and did not face a substantial threat of personal liability for these claims").

### C.    Palkon Fails to Plead That Any Outside Directors Are Dominated and Controlled By Vince McMahon

Palkon also makes the wholly unsupported claim that demand is futile because the Board is purportedly dominated and controlled by WWE's majority stockholder, Vince McMahon. (Proposed Compl. ¶¶ 170-176.)

In assessing demand futility, the Delaware Supreme Court has long held that directors of a company are entitled to "presumptions of independence, and that their acts have been taken in good faith and in the best interests of the corporation." *Aronson v. Lewis,* 473 A.2d 805, 815 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).   To overcome this presumption, a plaintiff must plead particularized facts showing that the directors are "beholden" to a majority stockholder or "so under their influence that their discretion would be sterilized." *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993).   A plaintiff therefore must plead facts suggesting that "the non-interested director would be more willing to risk his or her reputation than risk the relationship" with the majority stockholder.   *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1052 (Del. 2004).   A plaintiff also must plead "some alleged nexus" between the alleged domination and control and a "resulting personal benefit to the controlling party."   *Heineman v. Datapoint Corp.*, 611 A.2d 950, 955 (Del. 1992) *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

Palkon's allegations do not come close to pleading the particularized facts required to demonstrate that any of the nine Outside Directors are dominated and controlled by Vince

McMahon under these demanding standards, and the documents Palkon relies upon directly refute his claims that the Board could not independently evaluate a demand.

*First*, under well-settled standards articulated by Delaware's Supreme Court, Palkon's allegation that McMahon is the WWE's Chairman and CEO and its controlling shareholder (Proposed Compl. ¶ 170) is wholly insufficient to overcome the presumption of independence afforded to the Outside Directors. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc*, 845 A.2d at 1054 (stating that "[a] stockholder's control of a corporation does not excuse presuit demand on the board"); *Heineman*, 611 A.2d at 955 ("An allegation of controlling stock ownership does not raise, *per se,* a reasonable doubt as to the board's independence."); *Aronson,* 473 A.2d at 815 ("[I]n the demand context even proof of majority ownership of a company does not strip the directors of the presumptions of independence, and that their acts have been taken in good faith and in the best interests of the corporation.").

*Second*, Palkon's allegations that McMahon has "elevated" family members to "executive and director roles" at WWE (Proposed Compl. ¶¶ 171-175) also do not show that the Outside Directors could not independently consider a demand. *See Aronson*, 473 A.2d at 810, 816 (holding that a director's nomination or election "at the behest" of a controlling shareholder or "mere board approval" of an employment agreement benefitting the controlling shareholder were insufficient to show domination and control over the board); *Knox v. Rosenberg*, No. CIV. A. H-99-0123, 1999 WL 35233291, at *16–17 (S.D. Tex. Sept. 28, 1999) (rejecting claim that allegations that directors agreed to appointment of controlling shareholder's children as senior officers and approved wasteful payments to them demonstrated domination and control over the board) (applying Delaware law).  Palkon does not allege that any of the Outside Directors actually participated in the elevation of McMahon's family members to officer and director roles.

In any event, the election of these family members occurred years ago and has been repeatedly disclosed to and ratified by WWE's shareholders.[3]  *See Solomon v. Armstrong*, 747 A.2d 1098, 1115-16, 1127 (Del. Ch. 1999), *aff'd*, 746 A.2d 277 (Del. 2000) (holding that shareholder ratification of transaction after full disclosure was fatal to breach of the duty of loyalty claim). Palkon also fails to allege any reason to believe that McMahon's family members were unqualified or unfit to serve in these roles.

*Third*, Palkon's allegation that "the Board meekly approved of the deal" to sell WWE's XFL Intellectual Property to Alpha in 2018 (Proposed Compl. ¶ 173) is both wildly inaccurate and wholly insufficient to demonstrate that the Outside Directors lack independence.  *See Aronson*, 473 A.2d at 817 (holding that "mere directorial approval of a transaction" is insufficient to demonstrate lack of independence).  Palkon cannot claim that the Board's approval of this transaction casts doubt on the independence of the four Outside Directors who were not even members of the Board at the time (Wexler, Singh, Pamon, and Nardini).  And more importantly, the documents produced to Palkon contradict—rather than support—his claim that the other Outside Directors lacked independence in connection with that transaction.



---

[3] For over a decade, WWE has disclosed to shareholders that members of McMahon's family, including Stephanie McMahon and Paul Levesque, served as officers and subsequently as directors. (*See, e.g.*, Ex. 30 at 3-4; Ex. 31 at 3-4.) Since 2015, shareholders have repeatedly elected McMahon and Levesque as directors by overwhelming margins. (*See, e.g.*, Ex. 32 at 3 (Apr. 21, 2016) (reporting 99.9% of shares voted for McMahon and Levesque).)

Indeed, Palkon does not even attempt to challenge this conclusion or claim that the transaction does not meet the entire fairness standard under Delaware law. *See Monroe Cty. Emps.' Retire. Sys. v. Carlson*, No. 4587, 2010 WL 2376890, at *2 (Del. Ch. June 7, 2010) ("Delaware law is clear that even where a transaction between the controlling shareholder and the company is involved—such that entire fairness review is in play—plaintiff must make factual allegations about the transaction in the complaint that demonstrate the absence of fairness. Simply put, a plaintiff who fails to do this has not stated a

claim.  Transactions between a controlling shareholder and the company are not per se invalid under Delaware law.  Such transactions are perfectly acceptable if they are entirely fair, and so plaintiff must allege facts that demonstrate a lack of fairness."); *In re Bos. Celtics Ltd. P'ship S'holders Litig.*, No. 16511, 1999 WL 641902, at *4 (Del. Ch. Aug. 6, 1999) ("[I]t also is necessary for the plaintiff to allege specific items of misconduct that demonstrate unfairness, in order to survive a motion to dismiss."); *Solomon v. Pathe Commons Corp.,* No. 12563, 1995 WL 250374, at *5 (Del. Ch. Apr. 21, 1995) ("Even in a self-interested transaction in order to state a claim a shareholder must allege some facts that tend to show that the transaction was not fair."), *aff'd*, 672 A.2d 35 (Del. 1996).

Palkon suggests that the substantial consideration for the transaction was inadequate because the Ebersols reviewed a draft marketing plan to purchase "all XFL assets" for $50 million in cash and stock and met with McMahon on May 18, 2017 to "discuss a possible XFL deal."  (Proposed Compl. ¶¶ 50-51).  But Palkon does not actually allege that the Ebersols or anyone else ever offered McMahon any amount of money to purchase the XFL Intellectual Property, and the documents on which he relies shows that the draft business plan was never pursued.  And as Palkon is well aware, Charlie Ebersol has confirmed under oath that the Ebersols never offered McMahon any sum of money for the XFL Intellectual Property.

In sum, Palkon's allegations fall far short of the standard for pleading that the Outside Directors are dominated or controlled by McMahon.  Palkon does *not* allege facts showing that McMahon threatened the Outside Directors or replaced directors who disagreed with him.  Palkon does *not* allege facts showing that the Outside Directors have very close personal relationships with McMahon that somehow would impair their independence.  Palkon does *not* allege that directors receive compensation or financial benefits that are tied to McMahon's

approval of their actions.  Palkon does *not* allege that the Outside Directors routinely vote in accordance with McMahon's wishes without making an independent and informed decision. And Palkon does *not* allege that the Outside Directors approved of any transactions that were so unfair to WWE that they raise serious doubts about their independence.  *See Knox*, 1999 WL 35233291, at *16–17 (holding that plaintiff did not allege particularized facts showing that a majority of the current board was dominated and controlled by shareholder where such allegations were absent from the complaint) (applying Delaware law).  Accordingly, Palkon has failed to plead demand futility on the grounds that a majority of the Board would not independently consider a demand.

### D.      Palkon's Proposed Complaint Fails to State a Claim for Relief

Palkon's Proposed Complaint is also legally insufficient because it fails to state any claim upon which relief can be granted.

### 1.      Palkon Fails to Plead a Breach of Fiduciary Duty Claim

Palkon's Proposed Complaint fails to state a claim for breach of fiduciary duty against any of Defendants for the same reason that it fails to plead demand futility:  it fails to plead any facts demonstrating that Defendants "(i) knowingly disseminat[ed] materially false information and (ii) were deliberately misinforming shareholders."  *Merholz*, 2020 WL 6546007, at *9 (internal quotation marks and citation omitted).

Palkon does not allege any facts demonstrating that Defendants knowingly made any materially false or misleading statements by omitting the termination of the OSN agreement from WWE's February 2019 and April 2019 public disclosures. █████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████

Palkon also does not allege any facts demonstrating that Defendants knew that the July 2019 public disclosures stating that WWE believed that it had an "agreement in principle" with GSA were false and misleading. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████   The fact that WWE did not ultimately reach a media rights agreement with the GSA at the end of 2019 does not mean that any statements made in July 2019 concerning the status of their negotiations were knowingly false and misleading—particularly where those statements expressly noted the risk that such an agreement may not occur and the likely effect on the company's OIBDA projections if the agreement did not materialize.  *See In re Synchrony Fin. Sec. Litig.*, 450 F. Supp. 3d 127, 152-56 (D. Conn. 2020) (Bolden, J.) (holding that defendants' statements expressing confidence in the renewal of an agreement with a key partner did become materially misleading merely because the renewal did not occur); (*see also* Defs.' Mem. of Law in Supp. of Mot. to Dismiss, *Merholz* ECF No. 57-1 at 27-29, 63 at 9-11.)

## 2.    Palkon Fails to Plead an Unjust Enrichment Claim

Palkon's Proposed Complaint also fails to state a claim for unjust enrichment.  Palkon claims that Defendants Vince McMahon, Barrios, Wilson, and Gottesman were unjustly enriched by certain alleged insider stock sales.  (Proposed Comp. ¶¶ 145-150, 182-185.)  Palkon's claim fails for the same reasons that the insider selling claims in the complaints brought by the other Plaintiffs fail.  As Defendants have explained, neither Palkon nor any of the other Plaintiffs have pled sufficient "facts to support a reasonable inference that 'each sale by each individual defendant was entered into and completed *on the basis of, and because of,* adverse material non-

public information.'"  *Tilden v. Cunningham*, No. 2017-0837, 2018 WL 5307706, at *20 (Del. Ch. Oct. 26, 2018).   Indeed, Palkon's claim is refuted by his own allegations concerning McMahon's trades, which acknowledge that McMahon sold stock in order to raise the capital necessary to fund the XFL.  (Proposed Compl. ¶¶ 47, 56).  And Palkon's reliance on the mere "temporal proximity" of the trades to certain events is insufficient to support an inference of wrongdoing.  *See In re Clovis Oncology, Inc. Derivative Litig.*, No. CV 2017-0222, 2019 WL 4850188, at *15 (Del. Ch. Oct. 1, 2019).  Accordingly, Palkon's unjust enrichment claim based on his allegations of insider sales necessarily fails.  (*See also* Defs.' Mem. of Law in Supp. of Mot. to Dismiss, *Merholz* ECF No. 57-1 at 27-29, 33-35, 43-44.)

## IV.  The Court Should Dismiss These Lawsuits With Prejudice

This Court stated that it would dismiss these shareholder derivative actions *with prejudice* unless Palkon's motion to intervene and Proposed Complaint changed its conclusion regarding dismissal.  *See Merholz*, 2020 WL 6546007, at *1, 13.  Palkon's motion and Proposed Complaint—prepared with the benefit of the Section 220 documents—demonstrate that Plaintiffs' deficient allegations cannot be cured.  Moreover, failure to dismiss these actions with prejudice would force WWE—in whose interest Palkon and Plaintiffs purport to act—to waste substantial resources litigating the same issues repeatedly and piecemeal.  Accordingly, the Court should deny Palkon's motion and proceed to dismiss these actions with prejudice.  *See In re Crimson Expl. Inc. Stockholder Litig.*, No. 8541, 2014 WL 5449419, at *28-29 (Del. Ch. Oct. 24, 2014) (denying motion to intervene in a shareholder derivative action and dismissing action with prejudice as to the whole class because the Section 220 information "would not enable Plaintiffs or [proposed intervenor] to avoid dismissal," "only would add greater detail to arguments the Court already has rejected, without materially strengthening those arguments," and did not bring

"something so compelling to the table" as to justify "dismissing the Complaint with prejudice only as to the existing Plaintiffs").

## CONCLUSION

For the reasons set forth above, the Court should (1) deny Palkon's motion for permissive intervention, appointment of lead counsel, and denial of Defendants' motions to dismiss as moot, and (2) grant Defendants' motions to dismiss these actions with prejudice.

DEFENDANTS VINCENT K. MCMAHON, GEORGE A. BARRIOS, MICHELLE D. WILSON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, PATRICIA A. GOTTESMAN, and NOMINAL DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.,

By: */s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

Theodore V. Wells *(pro hac vice)*
Daniel J. Kramer *(pro hac vice)*
Richard C. Tarlowe *(pro hac vice)*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Phone: (212) 373-3000
Fax: (212) 757-3990
Email: twells@paulweiss.com
Email: dkramer@paulweiss.com
Email: rtarlowe@paulweiss.com

Justin Anderson *(pro hac vice)*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Phone: (202) 223-7300
Email: janderson@paulweiss.com

Jerry S. McDevitt *(pro hac vice)*
Curtis B. Krasik *(pro hac vice)*
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Stephen G. Topetzes (*pro hac vice*)
Theodore L. Kornobis (*pro hac vice*)
K&L GATES LLP
1601 K Street, NW
Washington, DC 20006
Phone: (202) 778-9000
Fax: (202) 778-9100
Email: stephen.topetzes@klgates.com
Email: ted.kornobis@klgates.com

## CERTIFICATE OF SERVICE

I hereby certify that, on November 20, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

  */s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)